IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ROBERT G. REID,

     Appellant,

v.

COMPASS BANK,

     Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-930

_____/

Opinion filed May 1, 2015.

An appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.

Matthew W. Burns, Destin, for Appellant.

Tompkins A. Foster and Wayne E. Klinkbeil of Foster & Klinkbeil, P.A., Orlando,
for Appellee.

PER CURIAM.

     Appellant, Robert G. Reid, seeks review of a Final Judgment wherein the trial

court determined that Appellant was indebted to Appellee, Compass Bank, in the

amount of $619,690.27. Appellant's primary argument on appeal is that Appellee was precluded from filing an action at law seeking damages as a result of Appellant's failure to satisfy his promissory note on the property at issue because Appellee included a prayer for a deficiency judgment in its foreclosure complaint and because the trial court reserved jurisdiction in the foreclosure judgment to enter a deficiency judgment. For the reasons stated herein, we affirm the Final Judgment.

In 2008, Appellee sued Appellant in Okaloosa County to foreclose the mortgage on Appellant's property. Appellee requested that the trial court determine the total amount owed by Appellant and that if the proceeds of a foreclosure sale were not sufficient to satisfy its claim, the court "enter an order for a deficiency judgment" against Appellant. In May 2009, the trial court entered a Summary Judgment in Foreclosure, finding that Appellant owed Appellee $969,690.27 and retaining jurisdiction "for the purpose of making any and all further orders as may be necessary and proper, including a deficiency judgment against appropriate Defendant(s) herein." In October 2009, Appellee purchased the property at the foreclosure sale, and a Certificate of Title was issued in November 2009.

In January 2010, Appellee filed a Complaint against Appellant in Okaloosa County, seeking damages resulting from Appellant's failure to satisfy the promissory note on the property. In April 2010, Appellant moved to dismiss the Complaint for lack of jurisdiction, arguing that because the foreclosure judgment

2

reserved jurisdiction to adjudicate a deficiency judgment, "jurisdiction reposes in that case and cannot be acquired in the present civil action." In June 2010, Appellee moved to consolidate the foreclosure action and the action at law. The trial court granted the consolidation motion in November 2010. Appellant's motion to dismiss the action at law was denied in May 2012.

The trial court held a bench trial in the consolidated cases in January 2014, during which Appellee presented evidence that it sold the property in February 2010 for $350,000 cash "less roughly 40-some odd thousand in costs, which gives us $318,000" and testimony that the property's appraised value was $350,000 at the time of the foreclosure sale and the subsequent sale of the property. Appellee's counsel argued that after deducting the $318,200 Appellee received for the property after costs, the remaining balance due from Appellant was $651,409. After hearing argument concerning the propriety of the action at law in light of Appellee's prayer for a deficiency judgment in its foreclosure complaint and the court's reservation of jurisdiction in the foreclosure judgment to enter a deficiency decree, the trial court stated in part:

> **I do agree with you in one regard and that is that because it is in fact a deficiency, not truly an action on the note, that all of the principles would apply as to deficiency law in determining the amount that remained outstanding.** . . .
>
> . . .
>
> Now, let's address the question of value. I am also aware the decisions recently have said that if a judge makes a decision as to value, which I believe in this case that is the credit that should be given, **is the**

3

**value of the property at the date of sale**, that I have to express the basis of that determination. . . . Here I have the testimony, both of the appraiser and we have an actual sale within four months, I believe, of the date of foreclosure to a third-party. And that amount is $350,000. Now, we have – now the owner is always entitled to express an opinion of value. [Appellant's] opinion is that the property was worth a million dollars. I will take that at face value, but it is hard for the Court to reconcile with great disparity between [Appellant's] opinion of value and what appears to be a third-party sale on the market. I heard no testimony that would suggest that the sale was other than a free and voluntary sale. . . . So, I believe the competent, substantial evidence is to accept the valuation of 350. I realize that the testimony was [] that there were costs of that sale. However, since I am accepting – **since I am determining that the proper measure is a deficiency measure, it would be the value of the property, not the proceeds of the sale, which would determine the credit to which the debtor was entitled**. Under the circumstances, that credit would be the $350,000, not the, what, 318,200 . . . . That would be the judgment of the Court.

(Emphasis added). The Final Judgment, which was filed under the foreclosure case number, not the action at law case number, set forth that the amount due on the foreclosure judgment, which was $969,690.27, "Less Credit for Value at time of sale" of $350,000, resulted in Appellant being indebted to Appellee in the amount of $619,690.27. This appeal followed.

Appellant's main argument on appeal is that Appellee was foreclosed from filing an action at law on the promissory note given its prayer for a deficiency judgment in its foreclosure complaint and the trial court's reservation of jurisdiction to enter a deficiency judgment. This argument presents an issue of law that is reviewable de novo. Fla. Ins. Guar. Ass'n, Inc. v. Bernard, 140 So. 3d 1023, 1027 (Fla. 1st DCA 2014) (noting that an issue of law is reviewable de novo).

4

Prior to June 7, 2013, section 702.06, Florida Statutes, which is entitled

"Deficiency decree; common-law suit to recover deficiency," provided:

> In all suits for the foreclosure of mortgages heretofore or hereafter executed the entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound judicial discretion of the court, but **the complainant shall also have the right to sue at common law to recover such deficiency, provided no suit at law to recover such deficiency shall be maintained against the original mortgagor in cases where the mortgage is for the purchase price of the property involved and where the original mortgagee becomes the purchaser thereof at foreclosure sale and also is granted a deficiency decree against the original mortgagor.**[1]

(Emphasis added). Section 702.06 was amended in 2013 to read:

> In all suits for the foreclosure of mortgages heretofore or hereafter executed the entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound discretion of the court; however, in the case of an owner-occupied residential property, the amount of the deficiency may not exceed the difference between the judgment amount, or in the case of a short sale, the outstanding debt, and the fair market value of the property on the date of sale. For purposes of this section, there is a rebuttable presumption that a residential property for which a homestead exemption for taxation was granted according to the certified rolls of the latest assessment by the county property appraiser, before the filing of the foreclosure action, is an owner-occupied residential property. **The complainant shall also have the right to sue at common law to recover such deficiency, unless the court in the foreclosure action has granted or denied a claim for a deficiency judgment**.

See Ch. 13-137, § 5, Laws of Fla. (Emphasis added).[2]

---

[1] The language of section 702.06 was first included in section 5751 of the 1927 Compiled General Laws and was amended in 1929.

[2] With respect to the foreclosure amendments of 2013, the Legislature set forth:

In addressing Appellant's argument, a review of the case law construing section 702.06 is instructive. In <u>Younghusband v. Ft. Pierce Bank & Trust Co.</u>, 130 So. 725, 727 (Fla. 1930), the supreme court held that "[i]f no deficiency judgment is entered in foreclosure sale, it is clear that a suit at law for any amount still due is available to the holder." In <u>Cragin v. Ocean & Lake Realty Co.</u>, 135 So. 795, 797 (Fla. 1931), the supreme court set forth that a plaintiff "having applied for and obtained a deficiency decree in their favor in the court of equity, could not, under the act of 1927, go into a court of law and maintain therein suits for the recovery of the balance due on the notes." In <u>Provost v. Swinson</u>, 146 So. 641, 643 (Fla. 1933),

---

The Legislature finds that this act is remedial in nature and applies to all mortgages encumbering real property and all promissory notes secured by a mortgage, whether executed before, on, or after the effective date of this act. In addition, the Legislature finds that s. 702.015, Florida Statutes, as created by this act, applies to cases filed on or after July 1, 2013; however, the amendments to s. 702.10, Florida Statutes, and the creation of s. 702.11, Florida Statutes, by this act, apply to causes of action pending on the effective date of this act.

<u>See</u> Ch. 13-137, § 8, Laws of Fla. The bill was approved by the Governor on June 7, 2013.

The legislative staff analysis for the amendment provides in part, "The bill also eliminates the common law recovery of such a deficiency when the court in the foreclosure action grants or denies a claim for a deficiency judgment. This provision appears to simplify the language of the current law without providing a substantive change in the law." <u>See</u> Fla. H.R. Comm. on Approp., CS/CS/HB 87 (2013) Staff Analysis (Apr. 18, 2013). The supreme court's case of <u>Cragin v. Ocean & Lake Realty, Co.</u>, 135 So. 795 (Fla. 1931), was cited in a footnote. <u>Id.</u>

6

a case relied upon by Appellant, the supreme court set forth, "When the complainant filed his bill in equity to foreclose the mortgage and therein prayed for a deficiency decree, he elected that forum in which to have his right adjudicated and became bound by that choice."

In Belle Mead Development Corp. v. Reed, 153 So. 843, 844 (Fla. 1934), another case relied upon by Appellant, the supreme court explained that in August 1928, the appellee executed three promissory notes payable to the McElroys. It was alleged that the notes were assigned and delivered before maturity to the appellant, the plaintiff in the case. Id. The appellant filed suit for the foreclosure of the mortgage, praying for a deficiency decree. Id. A foreclosure decree was obtained, the property was sold, and the proceeds were applied to the payment of the debt. Id. The appellant asked for a deficiency decree which was "resisted" by the "defendant," and the chancellor refused to enter a deficiency judgment. Id. The appellant subsequently filed an action at law to recover on the promissory notes, and the trial court "struck those pleas." Id. The supreme court, in affirming, set forth, "In the case at bar there was a special prayer for affirmative relief [for a deficiency decree]. The complainant thereby elected that forum in which to have its rights adjudicated and became bound by that choice." Id. The supreme court further set forth, "After specifically praying for a deficiency, the complainant may waive the relief prayed

7

for in that regard, but it does not avoid the choice of the forum by not applying for the deficiency decree." Id.

In Reid v. Miami Studio Properties, 190 So. 505, 505 (Fla. 1939), a case relied upon by Appellee in support of its argument that the action at law was permissible, the supreme court noted that the complainant, in his bill to foreclose, prayed for a deficiency decree in the event the property at issue did not bring enough to pay the amount of the indebtedness and costs. The Chancellor did not enter a deficiency decree and did not consider this phase of the prayer for relief. Id. The supreme court explained that the sole question presented was "whether or not under the facts stated the plaintiff Reid can now maintain an action at law to recover the amount of the deficiency judgment which he prayed for in the foreclosure but which prayer was not considered." Id. The supreme court noted that the defendant contended that the question should be answered in the negative because "the plaintiff in error elected his forum and is bound by the result of his election." Id. at 505-06. The defendant relied upon Provost and Belle Mead in support of its argument. Id. at 506. The supreme court set forth:

> We understand the law to be that where there is no prayer for a deficiency and where one is not sought or entered in the foreclosure proceeding the law courts may be resorted to to recover one. Since the entry of a deficiency decree under Section 5751, Compiled General Laws of 1927, is within the sound discretion of the Chancellor and if entered, the one in whose favor it is entered may resort to a suit at law to recover it, we see no basis for the logic that he is precluded from an

8

action at law to recover one if the chancellor is importuned to enter it and declines to consider the question or to make any ruling thereon.

The cases relied on by defendant in error have been examined. They involve other factual situations affecting deficiencies but we do not consider that they rule the question we have here nor are we convinced that the elements essential to constitute an election of remedies are present.

In fine, we understand Section 5751, Compiled General Laws of 1927, to mean that **if a deficiency decree is asked for in a foreclosure and granted, that settles the question of what forum may be sought for relief but if not asked for or if asked for and overlooked or not considered, the right of the claimant is not affected. He may sue at law and recover such portion as he may prove himself entitled to**.

Id. (Emphasis added).

In Crawford v. Woodward, 191 So. 311, 311 (Fla. 1939), the supreme court, relying on Provost, Cragin, and Belle Mead and finding Reid distinguishable, determined that the plaintiff could not maintain an action at law after the foreclosure where the plaintiff prayed for a deficiency decree, notwithstanding the facts that the plaintiff later stated in the confirmation of the foreclosure sale that "Complainants are not asking for a deficiency decree" and none was rendered by the chancellor.

In Luke v. Phillips, 3 So. 2d 799, 799 (Fla. 1941), the supreme court addressed the plaintiff's contention that Reid overruled Belle Mead. The supreme court, without setting forth the facts of the case, set forth, "[T]he instant case is ruled by Reid . . . wherein we pointed out that the facts of that case were distinct from those in the Belle Mead . . . case and that line of cases which were not inferentially

9

or otherwise overruled." Id.

In McLarty v. Foremost Dairies, 57 So. 2d 434, 434 (Fla. 1952), the supreme court considered a petition for writ of certiorari to review a judgment of the Duval County Circuit Court which affirmed the judgment of the Civil Court of Record for Duval County. The supreme court explained that the respondent was the owner and holder of a note secured by chattel mortgage and brought suit in Volusia County against the petitioner to foreclose the mortgage. Id. In the suit to foreclose, the respondent prayed for a deficiency decree. Id. No further action was taken with regard to the prayer for deficiency. Id. The personal property mortgaged was sold pursuant to a final decree entered in the foreclosure proceedings and after crediting the proceeds of the sale to the note, there remained due and owing to the plaintiff $1,548.41. Id. "At no time during the entire proceedings was any request made for a deficiency nor was the matter called to the attention of the Court in any way." Id. The only time or place where the matter of deficiency appeared in the proceedings was the prayer for deficiency contained in the bill of complaint. Id. The respondent "[i]n due course" filed suit in Duval County for the balance due under the note after crediting the proceeds of the foreclosure sale. Id. The petitioner, the defendant below, pleaded as a defense the foreclosure suit and the prayer for deficiency contained in the bill of complaint. Id. It was the contention of the petitioner that the respondent "having prayed for a deficiency without obtaining one, could not sue

upon the note to recover the balance due upon the mortgage note." Id.

The supreme court found that the case was controlled by Reid and Luke and noted the alleged confusion between those cases and the cases of Crawford and Belle Mead. Id. The supreme court explained that although the facts in Luke did not state that a deficiency decree was prayed for, its review of the record in that case showed that the bill to foreclose the mortgage contained a prayer for a deficiency judgment. Id. at 435. It also explained that the facts of the case at hand were identical to the facts of Luke where the "sale of the mortgage property and disbursements were approved and confirmed by the Chancellor but no deficiency decree was entered or requested." Id. After noting that its holding in Reid was reaffirmed in Luke, the supreme court set forth, "If the opinion in Reid . . . as affirmed in Luke . . . is in conflict with any other holdings with reference to the subject matter, such holdings, or opinions, are over-ruled to the extent of such conflict." Id. The supreme court found no departure from the essential requirements of the law in the case before it. Id.

Thereafter, in First Federal Savings & Loan Association of Broward County v. Consolidated Development Corp, 195 So. 2d 856, 858 (Fla. 1967), the supreme court addressed McLarty, Reid, and Luke. In First Federal Savings, the petitioner brought a foreclosure suit in Palm Beach County and prayed for a deficiency decree if the proceeds of the mortgage sale were less than the amount due on the

11

mortgage. Id. at 857. The final decree of foreclosure expressly reserved jurisdiction in the court for the determination of any motion for a deficiency decree. Id. The petitioner then brought an action to recover the deficiency in Broward County and represented to the foreclosure court in Palm Beach County that inasmuch as no motion had been made there for a deficiency decree, there was no longer a need for retention of jurisdiction of the cause in that court. Id. The foreclosure court entered an order terminating jurisdiction. Id. The Broward County court dismissed the case before it, ruling that the petitioner, after having selected its forum in Palm Beach County, should not be permitted to subject the respondents to further harassment and expense. Id. The dismissal was appealed to the Fourth District Court of Appeal. Id. After noting that the abandonment of jurisdiction in Palm Beach County did not occur until twenty-six days after the action at law was filed in Broward County, the supreme court explained that the Fourth District decided the case "on the principle that a court may not switch its jurisdiction, or power, on and off as one would an electric light." Id. at 857-58. The supreme court also noted the Fourth District's determination that "[f]or the purposes of deficiency decrees vel non this power is not for the benefit of the court; hence, it cannot waive its jurisdiction in that regard. It may refuse or refrain from exercising the power, but the chancellor cannot abjure a court of equity of its innate or inborn jurisdiction by mere words of jacitation." Id. at 858. The Fourth District concluded that the Palm Beach County Circuit Court

12

still had jurisdiction of the subject matter and the question of a deficiency decree and held that the dismissal in Broward County constituted a dismissal without prejudice to the plaintiff's right to have the question of deficiency determined by the Palm Beach County Circuit Court. Id.

On first examination of the petition for certiorari, the supreme court concluded that argument should be heard on the matter because of apparent conflict with its prior decisions. Id. The supreme court summarized some of its prior decisions, including Reid, McLarty, and Luke. Id. It distinguished Reid because in the case at hand "the request [for a deficiency decree] was made in the complaint and apparently was not immediately considered but was deferred as the court retained jurisdiction to settle any motion for deficiency." Id. The supreme court set forth, "So it may be said that the request for deficiency was neither considered nor overlooked. Here again on the salient facts the plaintiff was not at this point free to seek an adjudication elsewhere, hence a conflict was not developed." Id. The supreme court stated of McLarty, "[T]here was a prayer for a deficiency but thereafter request for that relief was ignored." Id. It found that the holding in Luke was essentially the same as the one in Reid. Id. The supreme court was ultimately unable to discover the conflict that would vest jurisdiction with it because "there appears to be no inconsistency between what was held here and what was decided in the cited cases." Id. It set forth, "There has been no disturbance of the rule that if a deficiency

13

is sought and the relief is overlooked or not considered, the one entitled to the recovery of the balance of the debt left over after the proceeds of the mortgage sale have been credited may sue for the remainder at law." Id. at 859. The court found, however, that the "principle would have to be stretched out of form to condone what the plaintiff undertook in this case." Id. It concluded that the Fourth District's decision was sound and did not disrupt the law that "appears firmly established." Id.

In support of its argument on appeal that its action at law was permissible, Appellee relies not only on Reid but also upon the plain language of section 702.06, both before and after the 2013 amendment. While we agree that the plain language of both versions of section 702.06 supports an argument that a party may file an action at law to recover a deficiency so long as a trial court has not actually ruled upon a request for a deficiency judgment in the foreclosure case, cases such as Belle Mead and First Federal Savings suggest otherwise. We note also that any question as to whether Reid permits a party to file an action at law after including a prayer for a deficiency judgment in a foreclosure complaint and after the trial court reserves jurisdiction to consider such a request was resolved by the supreme court in First Federal Savings. There, as here, the foreclosure complaint contained a prayer for a deficiency decree, and the foreclosure judgment expressly reserved jurisdiction to rule upon a deficiency request. As the supreme court noted in First Federal Savings, there was not a reservation of jurisdiction in Reid. As such, Appellee's reliance

14

upon <u>Reid</u> is misplaced.[3]

Notwithstanding the fact that <u>First Federal Savings</u> supports the argument that a party is not entitled to pursue an action at law on a promissory note where that party includes a prayer for a deficiency judgment in its foreclosure complaint and the trial court reserves jurisdiction to enter a deficiency judgment, we have determined that affirmance is warranted in this case based upon the circumstances presented. Unlike the situation in <u>First Federal Savings</u> where the foreclosure court

---

[3] As Appellant acknowledges, certain language in more recent cases is supportive of Appellee's argument; none of the cases, however, were issued by the supreme court, and none mention <u>First Federal Savings</u>. <u>See</u> <u>Capital Bank v. Needle</u>, 596 So. 2d 1134, 1136 (Fla. 4th DCA 1992) ("[C]ase law seems to suggest that where a party seeks a foreclosure and a deficiency judgment for failure to pay on a promissory note, and there is an actual adjudication on the merits of the claim for deficiency, that party cannot proceed on a new action based on the same promissory note."); <u>see also</u> <u>Royal Palm Corporate Ctr. Ass'n, Ltd. v. PNC Bank, NA</u>, 89 So. 3d 923, 932 n.9 (Fla. 4th DCA 2012) (noting that "[a] plaintiff cannot pursue an action on the note or guaranty where the plaintiff has prayed for the court to exercise its equity jurisdiction and the court has adjudicated the issue, either granting or denying judgment" and that "when a plaintiff forecloses on a security and the trial court does not exercise its jurisdiction to consider the merits of a deficiency judgment, the plaintiff may file an action on the promissory note or guaranty to recover the remaining indebtedness"); <u>De Las Cuevas v. Nat'l Enters. Inc.</u>, 927 So. 2d 41, 44-45 (Fla. 3d DCA 2006) (noting that section 702.06 has been interpreted to allow a post-foreclosure action to recover the balance due on a note where the court in the foreclosure action did not adjudicate the issue of a deficiency); <u>Chrestensen v. Eurogest, Inc.</u>, 906 So. 2d 343, 345 n.2 (Fla. 4th DCA 2005) ("While it is possible to include the deficiency claim in the foreclosure action, and in this case the trial court's final judgment of foreclosure specifically retained and reserved jurisdiction to enter deficiency judgments, section 702.06 . . . allows the claimant to bring a separate action at common law to recover the deficiency.").

entered an order terminating its jurisdiction, the trial court in this case granted Appellee's motion to consolidate the foreclosure case and the action at law. Therefore, in contrast to the Palm Beach County Circuit Court in First Federal Savings, the trial court in this case still had jurisdiction in the foreclosure case. Although Appellant cites case law for the proposition that consolidated cases maintain their independent status with respect to the rights of the parties involved,[4] Appellant does not contend on appeal that the trial court erred in granting Appellee's motion to consolidate or in denying his motion to dismiss the action at law. We note also that although Appellant moved to dismiss the action at law prior to Appellee moving for consolidation, the record does not contain any argument put forth below by Appellant in opposition to consolidation. As such, any question as to whether consolidation was proper is not before us.

More significant to our disposition is the fact that the trial court ultimately treated the case not as an action at law but as a deficiency judgment proceeding. As we explained, the court stated in part, "I do agree with you in one regard and that is that because it is in fact a deficiency, not truly an action on the note, that all of the principles would apply as to deficiency law in determining the amount that remained outstanding." The court further stated, "[S]ince I am determining that the proper measure is a deficiency measure, it would be the value of the property, not the

---

[4] See St. Mary's Hosp., Inc. v. Brinson, 685 So. 2d 33, 35 (Fla. 4th DCA 1996).

16

proceeds of the sale, which would determine the credit to which the debtor was entitled." The trial court was correct in the measure it used for purposes of a deficiency judgment, and we find no error in the trial court's determination of a $350,000 property value. See Empire Developers Grp., LLC v. Liberty Bank, 87 So. 3d 51, 52 (Fla. 2d DCA 2012) (noting that the correct formula to calculate a deficiency judgment is the total debt, as secured by the final judgment of foreclosure, minus the fair market value of the property as determined by the court and that the critical date the fair market value must be established for purposes of determining such a judgment is the date of the foreclosure sale). As we also noted, the Final Judgment contained the foreclosure case number, not the action at law case number. Moreover, the record is devoid of any evidence, and Appellant makes no showing on appeal, as to how he was prejudiced or harmed by the manner in which the consolidated cases proceeded or the way in which the trial court calculated his indebtedness to Appellee. See McDowell v. Guinta, 421 So. 2d 810, 810 (Fla. 4th DCA 1982) ("Although appellants have demonstrated procedural error, they have failed to establish that they were prejudiced thereby. The record reflects several technical procedural errors by the trial court in allowing the appellee to proceed on pleadings that would usually merit dismissal with an opportunity to replead. Notwithstanding these errors the substance of the appellee's claims were properly before the court, and the appellants were sufficiently apprised of those claims to bar

17

the necessity of a retrial. This was, in essence, the view of the trial court in allowing the appellee to present her claims to the jury. Obligated as we are not to place form over substance, the trial court's decision should be affirmed."); McCall v. McCall, 386 So. 2d 275, 276 (Fla. 2d DCA 1980) (noting that the trial court arrived at an "eminently equitable and appropriate result" under the facts of the case and that the court's only error was declaring that one of the parties had a "special equity" in the family home and explaining that, while "[t]here may be cases where such an error would require reversal, . . . we can discern no prejudice from letting the present award stand").

Accordingly, we AFFIRM.

LEWIS, C.J., BENTON and THOMAS, JJ., CONCUR.